UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    v.

JUSTIN MILLS,
 a/k/a "xTGxKAKAROT,"

       Defendant.

12 Cr. 886 (PKC)

## GOVERNMENT SENTENCING SUBMISSION

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

SERRIN TURNER
Assistant United States Attorney
- Of Counsel -



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

June 11, 2013

<u>By E-mail and ECF</u>
Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:   *United States v. Justin Mills, a/k/a "xTGxKAKAROT,"*
              12 Cr. 886 (PKC)

Dear Judge Castel:

      Defendant Justin Mills is scheduled to be sentenced on June 13, 2013. The Government respectfully submits this letter in advance of the sentencing and in response to the defendant's sentencing memorandum dated May 31, 2013, which seeks a below-Guidelines sentence. For the reasons set forth below, the Court should reject the defendant's request and sentence the defendant within the Guidelines range stipulated between the parties of 87 to 108 months' imprisonment.

*A.*    *Background*

      As described more fully in the PSR, the defendant was arrested as part of an undercover sting operation aimed at those involved in "carding" crimes – various criminal activities associated with stealing personal identification information and financial information belonging to other individuals (*e.g.*, account information associated with credit cards, bank cards, debit cards, or other access devices) and using that information to obtain money, goods, or services without the victims' authorization or consent. PSR ¶ 11. Those involved in carding crimes – "carders" – often use online forums on the Internet to facilitate their criminal activity, by exchanging information related to carding, such as hacking methods or computer-security vulnerabilities that can be used to obtain personal identification information, and also by exchanging goods and services related to carding, such as stolen credit card account numbers or other personal identification information that can be used to consummate fraudulent online purchases. *Id*.

  The sting operation that resulted in the defendant's arrest involved the use of an undercover carding forum controlled by the FBI (the "UC Site").  PSR ¶ 12.  The defendant was a member of the UC Site whose primary activity on the site consisted of trafficking in access devices – specifically, stolen credit card data and stolen usernames and passwords that could be used to access online accounts, including accounts at financial websites such as banks and Paypal (an online payment service).  PSR ¶ 13.  In addition to selling stolen access devices, the defendant used stolen access devices himself to effect fraudulent purchases of gift cards and goods on the Internet, which he then sold to others.  PSR ¶¶ 14.

  The username/password combinations sold by the defendant were collected through a form of malicious software, or "malware," that, once downloaded onto a user's computer, can steal login information stored in the user's Internet browser application.  PSR ¶ 18.e & f.  The defendant would typically sell these stolen username/password combinations "in bulk for cheap," as he put it in one message sent through the UC Site; but, upon request, he would sell them individually, for one dollar each.  PSR ¶ 18.d.  The defendant advertised on the UC Site that he had huge numbers of such username/password combinations available to sell.  For example, in a posting on the UC Site dated November 4, 2010, the defendant claimed he had 170,000 such username/password combinations for sale.  PSR ¶ 19.  The defendant provided a sample of his offerings to an undercover agent on the UC site, which included thousands of such username/password combinations.  PSR ¶ 21.c.  Additionally, the defendant sold stolen credit card information on the UC site for approximately $4 each.  PSR ¶ 28.  He offered to replace any card numbers within 30 minutes after purchase if they turned out to be dead or invalid.  *Id.*

  Following his arrest on June 27, 2012, the FBI searched a computer used by the defendant pursuant to a search warrant.  The search recovered files containing over 1,000 credit card numbers and tens of thousands of username/password combinations for various online accounts, including over 15,000 username/password combinations for Paypal accounts, which can be used to effect online payments.

### B. *The Court Should Impose a Sentence within the Stipulated Guidelines Range*

  As set forth below, a sentence within the Guidelines range stipulated between the parties of 76 to 108 months[1] is warranted in this case based on several factors, including the seriousness of the defendant's conduct and the interests of both general and specific deterrence.

---

[1] The Guidelines range determined by the Probation Office – 97 to 121 months, (PSR at 31) – is higher than the Guidelines range stipulated by the parties due to certain prior convictions of the defendant that the Government was not aware of at the time of the plea agreement.  While the Government does not contest the accuracy of the Guidelines calculation contained in the PSR, the Government believes that a sentence within the Guidelines range stipulated between the parties would adequately serve the goals of sentencing and does not seek a sentence above this range.

3

*1. Seriousness of the Defendant's Conduct*

First and foremost, a sentence within the stipulated Guidelines range is warranted based on the seriousness of the defendant's conduct. The sheer number of stolen access devices possessed by the defendant is staggering. The defendant himself claimed to have well over 100,000 stolen access devices for sale. A search of his computer recovered more than 1,000 stolen credit card accounts and more than 15,000 Paypal accounts. The defendant used such stolen access devices to fraudulently obtain goods for himself, and he also sold them, "in bulk," to other criminals seeking to use the devices for fraudulent activity. The defendant engaged in this criminal activity for at least a year and a half, without any hint of concern for the many thousands of people whom he was exposing to the costs and burdens of identity theft and online fraud.

In short, the defendant's crime was extensive and inexcusable. Based on the seriousness of the defendant's conduct alone, a sentence within the stipulated Guidelines range is warranted.

*2. General Deterrence*

A sentence within the stipulated Guidelines range is also warranted in the interest of general deterrence. As explained above, the defendant was arrested as part of an undercover sting operation aimed at "carding" activity on the Internet. Because carders can use the Internet to facilitate their criminal activity while at the same time remaining largely anonymous and hidden from view, the ability of law enforcement to police carding activity on the Internet is limited. While the operation of the UC Site in the instant investigation allowed the FBI to fully investigate and arrest the defendant along with nearly two dozen other individuals, these defendants are but a small sample of the population of carders operating on the Internet today. Much "carding" activity on the Internet goes undetected; and even where it is detected, it is often not possible for law enforcement authorities to identify and arrest the perpetrators involved. Thus, it is vital that, where carders are apprehended – particularly facilitators like the defendant here – they be firmly punished in order to deter others like them who are unlikely to be caught themselves.

Deterrence interests are particularly salient here given that the sting operation at issue received wide attention in the press, including in news sources popular in technology circles. *See, e.g.*, *F.B.I. Says 24 Are Arrested in Credit Card Theft*, N.Y. TIMES, Jun. 26, 2012, *available at* http://www.nytimes.com/2012/06/27/business/fbi-says-24-people-are-arrested-in-credit-card-theft.html; *Operation Card Shop: FBI Arrested 24 Credit Card Cyber Criminals*, THE HACKER NEWS, Jun. 27, 2012, *available at* http://thehackernews.com/2012/06/operation-card-shop-fbi-arrested-24.html; *Feds Arrest 24 in Global Carding Ring Bust*, WIRED, Jun. 26, 2012, *available at* http://www.wired.com/threatlevel/2012/06/operation-card-shop. In order to maximize the deterrent effect of the sting operation, and to send a message to carders that their conduct carries serious potential consequences, the Court should sentence the defendant within the stipulated Guidelines range.

*3. Specific Deterrence*

Finally, a sentence within the stipulated Guidelines range is warranted to ensure that the defendant at bar is specifically deterred from committing further criminal conduct. Notably, this is not the defendant's first brush with the criminal system. In particular, the defendant's residence was searched in December 2011 by local authorities investigating a credit card fraud complaint. The authorities found and seized numerous fraudulently purchased goods in the defendant's bedroom. PSR ¶ 31. The defendant found out about the search soon after it occurred, but it evidently had no deterrent effect on him. The defendant continued his carding activity on the UC Site after the search, and remained engaged in carding all the way up to the time of his arrest in June 2012. Indeed, in attempting to locate the defendant in Colorado in order to effectuate his arrest, the FBI found that the defendant had recently stayed in multiple hotels in the area using stolen credit card information.

Accordingly, the Court should impose a sentence within the stipulated Guidelines range in order to send a clear message to the defendant that he cannot continue to engage in criminal conduct without expecting to pay the consequences for it.

**C.    Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court sentence the defendant within the stipulated Guidelines range of 87 to 108 months. Such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing, including the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law," "protect the public from further crimes of the defendant," and "afford adequate deterrence to criminal conduct."   18 U.S.C. § 3553(a)(2)(A-C).

    Respectfully submitted,

    PREET BHARARA
    United States Attorney

By:    /s/ Serrin Turner
    Serrin Turner
    Assistant United States Attorney
    Tel.: (212) 637-1946

cc:    Kelley Sharkey, Esq. (by ECF)